IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN BLAKENEY, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | No. 4:19-cv-79 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**REPLY TO GOVERNMENT'S RESPONSE IN
OPPOSITION TO MOTION TO EXPAND THE RECORD**

COMES NOW movant, STEVEN BLAKENEY, by and through counsel, and hereby files his reply to the government's response in opposition to his motion to expand the record. Doc. 43. In support of this reply, Mr. Blakeney states the following:

**Introduction**

Predictably the government argues that Mr. Blakeney's motion should be denied because the materials with which he wishes to expand the record do not help his claims or are merely speculative. Although the government goes to great lengths to argue that these documents are not deserving of this Court's review, it ***does not deny*** that these materials (original Pine Lawn police report #13-1337, 911 call made by "Mario" Samad before Mr.

Blakeney's arrival, and Billy Baker's original statement to the FBI) were withheld from Mr. Blakeney prior to his trial. Also, the government does not dispute that Mr. Blakeney should have had these documents in his possession prior to trial. The government now attempts to rationalize this failure by arguing that these documents have no value. The fact that these documents and recordings were never provided to Mr. Blakeney alone is enough for this Court to grant Mr. Blakeney's motion to expand the record.[1]

---

[1] For purposes of background, Mr. Blakeney notes that the government authorized its original criminal investigation against him based upon false information provided by his ex-wife during a contentious child custody battle (Mr. Blakeney now enjoys custody of his two sons) which resulted in further investigations that were unfounded. Also, at one time, the FBI had planned to use a confidential informant to enter Mr. Blakeney's police vehicle under false pretenses while in possession of illegal drugs so that Mr. Blakeney could be arrested for illegal drug possession. This plan was terminated by the United States Attorney's Office just prior to being carried out. Also, the FBI surveilled Mr. Blakeney while being at a neighborhood bar during his personal time and contacted the Missouri State Highway Patrol to arrest him for driving while intoxicated which proved to be fruitless. Also, the government did not charge Mr. Blakeney in 2013 immediately after the alleged false arrest of Nakisha Ford. It was not until he was illegally terminated from the Pine Lawn Police Department and the airing of false and sensational news stories on television in August 2015 that the government charged him. After being charged, a FBI SWAT team and a dozen local police officers came to his home and held his parents at gun point while he was taken into custody. Mr. Blakeney's counsel had previously informed him that he would receive notice when to turn himself into custody. Through FOIA litigation of FBI records, Mr. Blakeney has uncovered this pattern of misconduct aimed at securing his conviction.

Also, the government appears to be confusing a request to conduct discovery with Mr. Blakeney's request to expand the record with material already in his possession. As indicated in his motion to expand, Doc. 40, pp. 1-2, Mr. Blakeney has filed a motion to conduct discovery which - to date - has not been granted.[2] Even it this Court applied the good cause standard for leave to conduct specific discovery to the instant request, Mr. Blakeney's specific allegations "show reason to believe that [Mr. Blakeney] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). There is nothing speculative about the FBI materials which Mr. Blakeney wishes to expand the record with and he has more than demonstrated that he may be entitled to relief.

## Argument

### I. *Documents are not Speculative*

The government curiously argues that Mr. Blakeney's motion to expand the record should be denied because the FBI materials he wishes to include are merely speculative as to being exculpatory/impeaching or as to

---

[2]Mr. Blakeney hopes that this Court will grant his request for discovery. If granted, he will seek to obtain the 911 call and Billy Baker's initial FBI statement.

aiding his claims. Doc. 43, p. 1. The government ignores the fact that these documents amply provide support for his claims.

### A. April Brooks

The government contends that the FBI records Mr. Blakeney wishes to submit to support his claim that trial counsel was ineffective for failing to call April Brooks are merely speculative. In support of this contention, the government argues that: (1) Mario Samad testified on four occasions at Mr. Blakeney's trial that he did not call the police after Ms. Ford removed the sign; and (2) the government never contended that Mario Samad called the police at the urging of Mr. Blakeney. Doc. 43, p. 2. Again, the FBI memorandum to former Assistant United States Attorney Reggie Harris indicates that there were **more than one 911 call**. This 911 call would demonstrate that Mario Samad called the police immediately after Ms. Ford took down the sign and before Mr. Blakeney's arrival. This evidence would have impeached Mario Samad's testimony that he did not call 911.[3] Also, it corroborates Ms. Brooks' statement. These FBI documents are not

---

[3] Mr. Blakeney notes that the government violates a criminal defendant's right to due process of law, guaranteed by the Fourteenth Amendment when it allows false evidence to go uncorrected when it is presented. *Giglio v. United States*, 405 U.S. 150, 155 (1972).

speculative but go to the heart of the government's case that Mr. Blakeney was responsible for Ms. Ford's arrest which has now been discredited.

## B. Pine Law Police Department Report

The government argues that the suppressed Pine Lawn Police Department Report 13-1377 is of no consequence because the evidence adduced at trial showed that Mr. Blakeney had input regarding the victim's arrest and that he falsified the police report by supplying false information which he directed Officer Brock to write.[4] Doc. 43, p. 3. In support of this argument, the government again, and erroneously, cites *United States v. Moyers,* 674 F.3d 192, 208 (3rd Cir. 2012). *Moyers* is distinguishable from Mr. Blakeney's case because the supervising officer ***wrote the report himself*** knowing it to be false. There is no evidence nor has the government ever contended that Mr. Blakeney wrote the police report.

Regarding Office Brock's trial testimony, he recently gave a deposition in the then pending civil action brought by Ms. Ford (Ms. Ford subsequently dismissed the case). Mr. Blakeney submitted this deposition with his reply. Doc. 26-2. At the deposition, Officer Brock testified that,

---

[4]In its response to Mr. Blakeney's Section 2255 motion, the government argued that Blakeney's *Brady* claim should be denied because the government did not withhold the original police report from the defense. Doc. 15, p. 23.

among other things, he could not be sure that government's trial exhibit 16 was the original police report because it was printed two years after the incident. Doc. 26-2, pp. 19-20. Also, regarding Blakeney's interactions with him, Officer Brock testified that Officer Struckhoff was his direct supervisor who he called to obtain the wanted, so it was Officer Struckhoff - not Mr. Blakeney - who approved the wanted for Ms. Ford which led to her arrest. Doc. 26-2, pp. 30, 37, 38. Officer Brock further testified that Prosecuting Attorney Anthony Gray's decision to charge Ms. Ford occurred at the Pine Law Market before any alleged misconduct by Mr. Blakeney at the police department. Doc. 26-2, p. 40. Furthermore, Officer Bock testified that probable cause existed to arrest Ms. Ford. Doc. 26-2, p. 38-39.

  Also, the government argues that the fact that Pine Lawn Police Report 13-1337 (without a signature block) is identical to a later print out of same report (Gov't Trial Ex. 16) which contained the same narrative and a blank signature block, is of no consequence to Mr. Blakeney's *Brady* claim. Doc. 43, p. 3. In support of this argument, the government states that Mr. Blakeney knew of the contents of the police report prior to trial. *Id.* at 4. The government's argument ignores the fact that Pine Lawn Police Department policy required written signatures on both the final

police/incident report of both the reporting officer and approving officer. *See* Affidavit of Police Chief Rickey Collins, Doc. 195-1, filed in *United States v. Blakeney*, No. 4:15-cr-00354-SNLJ (E.D. Mo.). The original police report discovered after trial does not have Mr. Blakeney's signature but Officer Brock's. In fact, no police report regarding Ms. Ford's alleged false arrest contains Mr. Blakeney's signatures. Also, it ignores the fact that the jury was concerned about the unsigned police report because it inquired during jury deliberations as to whether Mr. Blakeney had to sign the police report or not for it to be falsified. (Trial Transcript, Vol. IV, p. 64). If the original report had been disclosed to Mr. Blakeney, there is reasonable probability that the outcome of his trial would have been different.

**C. Billy Baker**

The government argues that Mr. Blakeney's request for a copy of Mr. Baker's initial statement to the FBI amounts to a fishing expedition, and that Mr. Blakeney has not demonstrated that its disclosure would have affected the verdict or his sentence. Although Mr. Baker did not testify at Mr. Blakeney's sentencing hearing, the trial court considered Mr. Baker's state court testimony when deciding on a sentence. If Mr. Baker's first statement had been provided to Mr. Blakeney, it could have been used as

impeaching evidence as to Mr. Baker's later statements.[5] Given that his first trial resulted in a mistrial, the disclosure of this statement may have resulted in the acquittal of Mr. Blakeney for the state court misdemeanor charge. Also, it would have damaged Mr. Baker's crediblity to the degree that his state court testimony would have had little impact upon Mr. Blakeney's sentence. For these reasons, it is clearly *Brady* material.

## II. *Mr. Blakeney is Entitled to an Evidentiary Hearing*

The government contends that this motion, as well as all of Mr. Blakeney's motions, be denied because the Court has all the information necessary in its possession to make its decision. Doc 43, p.6. Mr. Blakeney, however, is entitled to an evidentiary hearing because his claims, accepted as true, would entitle him to relief.

Specifically, Mr. Blakeney's claim that counsel was ineffective for failing to investigate and call key witnesses is deserving of an evidentiary

---

[5] Mr. Blakeney notes that the St. Louis City Circuit Attorney's Office originally declined to prosecute him for the alleged misdemeanor assault of Mr. Baker. The FBI obtained an initial 302 statement from Mr. Baker. Months later the FBI ,accompanied by St. Louis City police officers, obtained new statements from Baker. The original statement was not disclosed to Mr. Blakeney. Mr. Baker testified in his state court deposition that the FBI had contacted him and told him that he had to appear at Mr. Blakeney's state criminal proceedings. Previously, Mr. Baker had failed to appear.

-8-

hearing. These witnesses, if called, would have demolished the government's case and established, contrary to the government's now discredited theory, that the decision to arrest Nakisha Ford was made solely by Anthony Gray, the Pine Lawn Municipal Prosecuting Attorney, without the input of Blakeney or any witness that Blakeney had interviewed. Doc. 26-1, pp. 10-11, 16-17, 27, 30 - 32.

    Trial counsel had no strategic reason not to investigate and call these witnesses at trial. This is especially true in the case of Anthony Gray, the Pine Lawn Prosecuting Attorney. In fact, trial counsel never even called Anthony Gray on the telephone nor made an attempt to interview him. There is a reasonable probability that Mr. Gray's testimony would have changed the outcome of Mr. Blakeney's trial as he would have testified that he, and he alone, made the decision to arrest Ms. Ford without input from Mr. Blakeney or any witness that Mr. Blakeney had interviewed. Mr. Gray's testimony would have established that anything that happened after the police left the Pine Lawn Market was irrelevant and would have no bearing on Ford's lawful arrest. ***In fact, Mr. Gray instructed Mr. Blakeney to carry out Ms. Ford's*** arrest after his (Gray's) on the scene independent investigation prior to any misconduct that the government alleged that Mr. Blakeney committed. Doc. 26-1, pp. 16-17, 27, 30 - 32.

Similarly, Mr. Blakeney's other claims regarding trial counsel's failure to properly cross-exam Ms. Ford, and to object to the trial court's handling of jury instructions are deserving of an evidentiary hearing as they require fact finding by this Court. Also, Mr. Blakeney's claim that both trial and appellate counsel were ineffective for failure to challenge the indictment cannot be decided on the record. Finally, Mr. Blakeney's *Brady* claims as to the government's failure to disclose the original police report and 911 call are entitled to an evidentiary hearing.

**WHEREFORE**, for these reasons and those set out in Mr. Blakeney's motion to expand the record, Doc. 40, this Court should grant Mr. Blakeney's moton to expand the record to allow submission of the unredacted FBI reports should be granted.

        Respectfully submitted,

        LAW & SCHRIENER, LLC

*/s/ Kevin L. Schriener*
KEVIN L. SCHRIENER, Mo. #35490
Attorney for Movant Steven Blakeney
Law & Schriener, L.L.C.
141 North Meramec Avenue, Suite 20
Clayton, Missouri 63105
(314) 721-7095 – telephone
(314) 863-7096 – facsimile
kschriener@SchrienerLaw.com – e-mail

-10-

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing motion reply with the Clerk of the United States District Court for the Eastern District of Missouri to be served by operation of the Court's electronic filing system upon all parties of record, this 12th day of May, 2020.

>                     */s/ Kevin L. Schriener*
>                     KEVIN L. SCHRIENER